1  Vanessa R. Waldref
2  United States Attorney
   Eastern District of Washington
3  Michael J. Ellis
4  Assistant United States Attorney
   Michael L. Vander Giessen
5  Special Assistant United States Attorney
6  Post Office Box 1494
   Spokane, WA 99210-1494
7  Telephone:  (509) 353-2767
8
9              UNITED STATES DISTRICT
          FOR THE EASTERN DISTRICT OF WASHINGTON
10
11  UNITED STATES OF AMERICA,          Case No.: 2:22-cr-00138-RMP
12                   Plaintiff,        United States' Sentencing
13                                     Memorandum
14            vs.
15  FREDERICK TERRELL,
16                   Defendant.
17
18      The Plaintiff, the United States of America, by and through Vanessa R.
19  Waldref, United States Attorney for the Eastern District of Washington, Michael J.
20  Ellis, Assistant United States Attorney for the Eastern District of Washington, and
21  Michael L. Vander Giessen, Special Assistant United States Attorney for the
22  Eastern District of Washington, respectfully submits the following sentencing
23  memorandum. For the reasons stated below, and consistent with the parties' plea
24  agreement, the United States respectfully asks the Court to sentence the Defendant,
25  Frederick Terrell, to sixty months' imprisonment followed by three years'
26  supervised release.
27  //
28  //

## I.    INTRODUCTION

Mr. Terrell, a repeat perpetrator of violence against his intimate partners, knowingly possessed a firearm while knowing he was prohibited from doing so due to his felony convictions. The advisory United States Sentencing Guidelines range is fifty-one to sixty-three months' imprisonment. Only a sentence of sixty months' imprisonment adequately captures the nature and severity of Mr. Terrell's offense conduct, as well as his criminal history and acceptance of responsibility. Therefore, the United States recommends the Court sentence Mr. Terrell to sixty months' imprisonment followed by three years' supervised release. This proposed sentence is sufficient but not greater than necessary to achieve the sentencing purposes set forth in 18 U.S.C. § 3553(a).

## II.    STATEMENT OF FACTS

On April 14, 2022, Mr. Terrell's former intimate partner contacted Mr. Terrell's community corrections officer with the Washington State Department of Corrections and reported that Mr. Terrell had text messaged her three videos depicting Mr. Terrell shooting a handgun at a shooting range. ECF No. 26 at 5; ECF No. 37 ¶ 9. Mr. Terrell also sent text messages such as "Glock 19" and "And I bought a 9mm. sig." ECF No. 26 at 5; ECF No. 37 ¶ 9. The videos were recorded on April 8, 2022. ECF No. 26 at 5.

Further investigation revealed that, on April 8, 2022, Mr. Terrell went with some coworkers to the Sharp Shooting Indoor Range and Gun Shop in Spokane, Washington. *Id.*; ECF No. 37 ¶¶ 11, 13. While there, Mr. Terrell possessed and discharged a handgun belonging to one of his coworkers. ECF No. 26 at 5; ECF No. 37 ¶¶ 13, 15, 16. The firearm was a Glock Model 20 ten-millimeter pistol. ECF No. 26 at 5; ECF No. 37 ¶ 15. Mr. Terrell also attempted to purchase a firearm, placing a Smith & Wesson M&P Shield nine-millimeter pistol on

United States' Sentencing Memorandum – 2

layaway. ECF No. 26 at 6; ECF No. 37 ¶¶ 11–13. Mr. Terrell later admitted these acts to police. ECF No. 26 at 6; ECF No. 37 ¶¶ 13.

At the time he possessed the firearm, Mr. Terrell was serving an eighteen-month term of community custody on a 2021 Washington state conviction for second degree assault (domestic violence), in which he strangled and struck a different intimate partner. ECF No. 37 ¶¶ 105, 110. It was the seventh time Mr. Terrell had been convicted for a domestic violence assault. *Id.* ¶¶ 39, 55, 68, 85, 87, 97, 105. Those seven convictions spanned from 2000 to 2021 and arose from incidents in California, Nevada, and Washington state. *Id.* Further, in California, Mr. Terrell had been convicted of four felonies for which he ultimately served more than one year's imprisonment, namely for injuring a spouse or cohabitant in 2015, possessing a firearm as a felon in 2008, using force against an intimate partner in 2007, and second degree robbery in 2003. *Id.* ¶¶ 49, 55, 61, 87. In total, Mr. Terrell has violated his probation conditions on at least six occasions. *Id.* ¶¶ 10, 11, 51, 58, 102, 115.

Two of Mr. Terrell's nineteen convictions involved a firearm. *Id.* ¶¶ 43, 65. In 2008, Mr. Terrell's then-intimate partner reported Mr. Terrell "threatened to kill [her] while pointing a handgun at her face." *Id.* ¶ 65. "He then directed her to take him to a couple of other locations, one of which was a fast-food restaurant." *Id.* "While there, [Mr. Terrell] yelled profanities at [the victim] and said, 'You going to die tonight bitch!'" *Id.* "When they arrived back at their residence, Mr. Terrell hit her in the head with the back of a pistol, pulled her hair, and slapped her." *Id.* The victim was "unable to leave the residence until Mr. Terrell fell asleep." *Id.* She then "escaped and called law enforcement for assistance." *Id.*

In 2000, a witness reported Mr. Terrell assaulted his intimate partner and had a handgun. *Id.* ¶ 43. Mr. Terrell "had his hand on the back of the victim's neck and was leading her away when the witness interrupted and told Mr. Terrell he

United States' Sentencing Memorandum – 3

should not hit her." *Id.* ¶ 44. Mr. Terrell then "showed [the witness] the buttstock of a pistol which was located in his pants." *Id.*

Years later, Mr. Terrell's former intimate partner who reported his April 8, 2022 firearm possession told police "things had not been going well between her and [Mr.] Terrell, and when he sent her the video of him shooting guns she became concerned for her safety." Bates No. (available at ECF No. 17) 00000001.10. She said she was "certain [Mr.] Terrell had access to firearms if he really wanted to get one, and by his own admission he had committed violence of significant nature in the past." *Id.*

She said she was "obviously very concerned when [Mr.] Terrell sent her the videos of him shooting a gun and stating that he had purchased a firearm, and so she sent all of the information off to [his community corrections officer]." *Id.* at 00000001.10–.11. She said Mr. Terrell had made numerous threats against her before and had "really assaulted" her only once. *Id.* at 00000001.11. She described an incident in late March 2022, right before Mr. Terrell moved out of her residence, in which he "strangled her to the point where he almost rendered her unconscious, after the two had got into an argument." *Id.* She said "she never reported the assault because she was scared of what [Mr.] Terrell may do if she turned him in." *Id.* She said she had photographs of her injuries, though she did not ultimately provide them to police. *Id.* Thus, police did not develop probable cause to arrest Mr. Terrell for this alleged assault. *Id.* at 00000001.12. However, Mr. Terrell's community corrections officer remained concerned that Mr. Terrell had recently perpetrated domestic violence against his former intimate partner who reported his April 8, 2022 firearm possession. *Id.* at 00000001.04.

## III.    SENTENCING CALCULATIONS

Based on a total offense level of 17, a criminal history score of 19, and a criminal history category of VI, the government agrees with the United States

Probation Office that the Guidelines range applicable to Mr. Terrell's case is fifty-one to sixty-three months' imprisonment. ECF No. 37 ¶¶ 34, 120, 191, 210.

## IV.    SENTENCING FACTORS UNDER 18 U.S.C. § 3553(a)

In determining the appropriate sentence, the Court should consider the factors set forth in 18 U.S.C. § 3553(a).

## A.    The nature and circumstances of the offense and the history and characteristics of the defendant

These factors are concerning. Considering the extent of Mr. Terrell's domestic violence assault history, and the ways in which he has used firearms against his intimate partners before, his firearm possession here is far more dangerous than may be appreciated upon first impression.

Regarding the nature and circumstances of the offense, Mr. Terrell's former intimate partner who reported his April 8, 2022 firearm possession told police "things had not been going well between her and [Mr.] Terrell, and when he sent her the video of him shooting guns she became concerned for her safety." Bates No. (available at ECF No. 17) 00000001.10. She said she was "certain [Mr.] Terrell had access to firearms if he really wanted to get one, and by his own admission he had committed violence of significant nature in the past." *Id.*

She said she was "obviously very concerned when [Mr.] Terrell sent her the videos of him shooting a gun and stating that he had purchased a firearm, and so she sent all of the information off to [his community corrections officer]." *Id.* at 00000001.10–.11. She said Mr. Terrell had made numerous threats against her before and had "really assaulted" her only once. *Id.* at 00000001.11. She described an incident in late March 2022, right before Mr. Terrell moved out of her residence, in which he "strangled her to the point where he almost rendered her unconscious, after the two had got into an argument." *Id.* She said "she never reported the assault because she was scared of what [Mr.] Terrell may do if she

United States' Sentencing Memorandum – 5

1   turned him in." *Id.* She said she had photographs of her injuries, though she did not

2   ultimately provide them to police. *Id.* Thus, police did not develop probable cause

3   to arrest Mr. Terrell for this alleged assault. *Id.* at 00000001.12. However, Mr.

4   Terrell's community corrections officer remained concerned that Mr. Terrell had

5   recently perpetrated domestic violence against his former intimate partner who

6   reported his April 8, 2022 firearm possession. *Id.* at 00000001.04.

7         Mr. Terrell's history and characteristics are equally concerning. At the time

8   he possessed the firearm, Mr. Terrell was serving an eighteen-month term of

9   community custody on a 2021 Washington state conviction for second degree

10  assault (domestic violence), in which he strangled and struck a different intimate

11  partner. ECF No. 37 ¶¶ 105, 110. It was the seventh time Mr. Terrell had been

12  convicted for a domestic violence assault. *Id.* ¶¶ 39, 55, 68, 85, 87, 97, 105. Those

13  seven convictions spanned from 2000 to 2021 and arose from incidents in

14  California, Nevada, and Washington state. *Id.* Further, in California, Mr. Terrell

15  had been convicted of four felonies for which he ultimately served more than one

16  year's imprisonment, namely for injuring a spouse or cohabitant in 2015,

17  possessing a firearm as a felon in 2008, using force against an intimate partner in

18  2007, and second degree robbery in 2003. *Id.* ¶¶ 49, 55, 61, 87. In total, Mr. Terrell

19  has violated his probation conditions on at least six occasions. *Id.* ¶¶ 10, 11, 51, 58,

20  102, 115.

21        Two of Mr. Terrell's nineteen convictions involved a firearm. *Id.* ¶¶ 43, 65.

22  In 2008, Mr. Terrell's then-intimate partner reported Mr. Terrell "threatened to kill

23  [her] while pointing a handgun at her face." *Id.* ¶ 65. "He then directed her to take

24  him to a couple of other locations, one of which was a fast-food restaurant." *Id.*

25  "While there, [Mr. Terrell] yelled profanities at [the victim] and said, 'You going

26  to die tonight bitch!'" *Id.* "When they arrived back at their residence, Mr. Terrell

27  hit her in the head with the back of a pistol, pulled her hair, and slapped her." *Id.*

28

1   The victim was "unable to leave the residence until Mr. Terrell fell asleep." *Id.* She

2   then "escaped and called law enforcement for assistance." *Id.*

3        In 2000, a witness reported Mr. Terrell assaulted his intimate partner and

4   had a handgun. *Id.* ¶ 43. Mr. Terrell "had his hand on the back of the victim's neck

5   and was leading her away when the witness interrupted and told Mr. Terrell he

6   should not hit her." *Id.* ¶ 44. Mr. Terrell then "showed [the witness] the buttstock

7   of a pistol which was located in his pants." *Id.*

8        As the presentence investigation report aptly summarizes, "Mr. Terrell has

9   used violence against many former intimate partners which includes, strangulation,

10  intimidation, and physical assault. Mr. Terrell has told multiple intimate partners

11  he is going to kill them and has pointed a firearm in the face of one of his former

12  romantic partners." *Id.* ¶ 209.

13       Mr. Terrell had a troubled and traumatic upbringing, having witnessed his

14  father's domestic violence assaults, substance abuse, and mental illness, and being

15  conscripted into gang life at a young age. *Id.* ¶¶ 158–61.

16       Mr. Terrell admits "drinking is part of [his] problem" and "continued up to

17  his arrest for this offense." *Id.* ¶ 21, 168. He specifies, "consuming alcohol is the

18  reason for his criminal history and medical conditions." *Id.* ¶ 168. As his mother

19  put it, "alcohol makes him [the defendant] do very bad things." *Id.* ¶ 164 (alteration

20  in original). He has "participated in substance abuse treatment on three occasions."

21  *Id.* ¶ 173. Yet, during the more than two decades he has been involved in various

22  state-level criminal justice systems, he has failed to demonstrate any lasting

23  change.

24       A sentence of sixty months' imprisonment best reflects the nature and

25  circumstances of this crime as well as Mr. Terrell's history and characteristics.

United States' Sentencing Memorandum – 7

**B.    The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense**

The offense is serious, reflects disregard for the rule of law, and requires just punishment. On these points, "data shows that offenders with domestic violence in their past pose a high risk of homicide." *Justice Department Announces Six New Firearms Technical Assistance Project Sites and Awards $750,000 to National Resource Center on Domestic Violence and Firearms*, U.S. Dep't of Justice (June 30, 2022), https://www.justice.gov/opa/pr/justice-department-announces-six-new-firearms-technical-assistance-project-sites-and-awards. "In fact, domestic violence abusers with a gun in the home are five times more likely to kill their partners, and in addition to their lethality, firearms are used by abusers to inflict fear, intimidation, and coercive control." *Id.* "Additionally, when a violent intimate partner has access to a firearm, nonfatal abuse may increase in severity, even when firearms are not directly used in a violent incident." April M. Zeoli, *Domestic Violence and Firearms: Research on Statutory Interventions* 2 (2018) (citation omitted), *available at* https://www.preventdvgunviolence.org/dv-and-firearms-zeoli.pdf. "Recent research suggests that the federal statute prohibiting those convicted of misdemeanor crimes of domestic violence from firearm purchase and possession has significantly reduced homicides of female intimate partners and male domestic children." *Id.* at 11.

Here, the offense is serious for several reasons, not the least of which is the magistrate court's findings at the detention hearing phase of Mr. Terrell's case:

> [T]he nature of the allegations in the Indictment are serious, particularly when considered in relation to Defendant's history and characteristics . . . . While the possession of the firearm at issue is alleged to have occurred at a firing range and is alleged to have been transitory, Defendant has a long criminal history that includes multiple convictions for violent offenses and the United States has

proffered that Defendant sent a video of him firing the weapon at issue in the Indictment to an estranged domestic partner. While Defendant claims he did not send the video with any threatening or malign intent, the Government has proffered police reports that indicate the Government has proffered that the recipient of the video viewed the act of transmitting the video as threatening, particularly after the video was sent after she had experienced domestic violence from Defendant and after their relationship ended. In the Court's view, it is a reasonable inference that Defendant sent the video with the intent to intimidate the recipient given the timing of when the video was sent (i.e. after the relationship ended on bad terms).

ECF No. 20 at 3–4; *see also id.* at 5–6 (applying the clear and convincing evidence standard in determining whether the United States met its burden of proof in the detention hearing).

The offense also reflects disregard for the rule of law because Mr. Terrell chose to possess a firearm despite repeated court warnings he was convicted of a felony or was otherwise prohibited from possessing a firearm. ECF No. 37 ¶¶ 49, 55, 61, 87, 104

Thus, there is a great need for the sentence in Mr. Terrell's case to reflect the seriousness of the offense, promote respect for the law, and provide just punishment. A sentence of sixty months' imprisonment is sufficient but not greater than necessary to accomplish this purpose.

## C. The need for the sentence imposed to afford adequate deterrence to criminal conduct

As indicated above, recent research suggests 18 U.S.C. § 922(g)(9) has been effective in saving lives. The United States hopes to achieve similar outcomes by enforcing 18 U.S.C. § 922(g)(1) in cases like Mr. Terrell's, where the defendant is a repeat perpetrator of violence against his or her intimate partners. The United States believes there is a great need for the sentence imposed in Mr. Terrell's case to adequately deter both him and other domestic violence perpetrators in this

district from possessing firearms when federal law clearly prohibits them from doing so. A sentence of sixty months' imprisonment is sufficient to achieve this objective. A lower sentence would be insufficient. But a higher sentence would be greater than necessary.

**D.    The need for the sentence imposed to protect the public from further crimes of the defendant**

According to data discussed above, domestic violence perpetrators pose a high risk of killing other people, especially their intimate partners. Domestic violence perpetrators with firearms in their homes are five times more likely to kill their intimate partners. Domestic violence perpetrators also use firearms to inflict fear, intimidation, and coercive control in their intimate partners. And when domestic violence perpetrators have access to firearms, the severity of nonfatal abuse may increase even when firearms are not directly used in the incident.

Considering the extent of Mr. Terrell's domestic violence assault history, and the ways in which he has used firearms against his intimate partners before, there is a great need for the sentence imposed in Mr. Terrell's case to protect his former intimate partners, and the public at large, from his further crimes. A sentence of sixty months' imprisonment is sufficient but not greater than necessary to accomplish this purpose.

**E.    The need for the sentence imposed to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner**

Mr. Terrell admits "drinking is part of [his] problem" and "continued up to his arrest for this offense." ECF No. 37 ¶ 21, 168. He specifies, "consuming alcohol is the reason for his criminal history and medical conditions." *Id.* ¶ 168. As his mother put it, "alcohol makes him [the defendant] do very bad things." *Id.* ¶ 164 (alteration in original). Mr. Terrell has "participated in substance abuse treatment on three occasions." *Id.* ¶ 173. Yet, during the more than two decades he

United States' Sentencing Memorandum – 10

has been involved in various state-level criminal justice systems, he has failed to demonstrate any lasting change.

As a sophomore, Mr. Terrell was expelled from high school for bringing a firearm to school. *Id.* ¶ 175. He did not graduate from high school and has not received a general educational development certificate. *Id.* ¶ 176, 179. He would like to participate in vocational training if incarcerated. *Id.* ¶ 177.

Mr. Terrell would likely benefit from services available to him in the Federal Bureau of Prisons, and his sentence should provide him access to such services.

**F.    The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct**

The best way to ensure consistent sentences for similarly-situated defendants across courtrooms, districts, and the country is for district courts to apply the Guidelines in the same manner everywhere. *See United States v. Saeteurn*, 504 F.3d 1175, 1181 (9th Cir. 2007); *United States v. Parker*, 462 F.3d 273, 277 (3d Cir. 2006); *United States v. Boscarino*, 437 F.3d 634, 638 (7th Cir. 2006). Ultimately, "the Guidelines remain the foundation of federal sentencing decisions." *Hughes v. United States*, 138 S. Ct. 1765, 1775 (2018). After all, "avoidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Guidelines ranges." *Gall v. United States*, 552 U.S. 38, 54 (2007). And "it is unquestioned that uniformity remains an important goal of sentencing." *Kimbrough v. United States*, 552 U.S. 85, 107 (2007). Further, "it is also legitimate to avoid 'unwarranted *similarities* among [defendants] who were not similarly situated.'" *United States v. Amezcua-Vasquez*, 567 F.3d 1050, 1058 (9th Cir. 2009) (alteration in original) (quoting *Gall*, 552 U.S. at 55). To achieve uniformity,

"district courts must take account of sentencing practices in other courts."[1] *Kimbrough*, 552 U.S. at 108. Yet, at the same time, "[t]o reach an appropriate sentence, [any] disparities must be weighed against the other § 3553(a) factors." *Id.*

Here, the need to avoid unwarranted sentence disparities is high. But what that requires in Mr. Terrell's case is adherence to and not variance from the Guidelines. *See* ECF No. 37 ¶ 209 ("[A] guideline range sentence appears to be sufficient but not greater than necessary . . . ."). The Guidelines range applicable to Mr. Terrell's case is fifty-one to sixty-three months' imprisonment. *Id.* ¶¶ 191, 210. A sentence of sixty months' imprisonment is reasonable and commensurate with sentences imposed on defendants similarly situated to Mr. Terrell.

## V.    SENTENCING RECOMMENDATION

The United States recommends the Court sentence Mr. Terrell to sixty months' imprisonment followed by three years' supervised release. Such a sentence adequately captures the nature and severity of Mr. Terrell's offense conduct, as well as his criminal history and acceptance of responsibility.

Dated: June 6, 2023.

Vanessa R. Waldref
United States Attorney

*s/ Michael L. Vander Giessen*
Michael L. Vander Giessen
Special Assistant United States Attorney

---

[1] A notable exception is that while § 3553(a)(6) "requires district courts to consider sentencing disparities between similarly situated *federal* defendants," "[i]t does not require district courts to consider sentence disparities between defendants found guilty of similar conduct in state and federal courts." *United States v. Ringgold*, 571 F.3d 948, 951 (9th Cir. 2009).

United States' Sentencing Memorandum – 12

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I hereby certify that on June 6, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Stephen R. Hormel.

*s/ Michael L. Vander Giessen*
Michael L. Vander Giessen
Special Assistant United States Attorney

United States' Sentencing Memorandum – 13