1  Stephen R. Hormel
   Hormel Law Office, L.L.C
2  17722 East Sprague Avenue
   Spokane Valley, WA 99016
3  Telephone: (509) 926-5177
   Facsimile: (509) 926-4318
4

5                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF WASHINGTON
6               (HONORABLE ROSANNA MALOUF PETERSON)

7  UNITED STATES OF AMERICA,        )
8                                    )
            Plaintiff,               )        No. 2:22-CR-138-RMP-2
9                                    )
     vs.                            )        DEFENDANT'S SENTENCING
10                                   )        MEMORANDUM & REQUEST
   FREDERICK TERRELL,                )        FOR DOWNWARD VARIANCE
11                                   )
                                     )
12          Defendant.               )
                                     )
13  ─────────────────────────────── )

14       FREDERICK TERRELL, through counsel, Stephen R. Hormel for Hormel

15  Law Office, L.L.C., submits the following Sentencing Memorandum and Request

16  for Downward Variance:

17  A.    **Introduction**.

18       When addressing a sentencing court's function in fashioning the appropriate

19  sentence, the Ninth Circuit, long ago, wrote:

20            [i]n making a decision in any particular case, good
              judgment will often require the evaluation of a complex
21            set of factors.  No single factor may be enough to point to
              the wise course of decision.  But a wise person will not
22            look on each particular factor abstractly and alone.
              Rather, it will be how the particular pieces fit together,
23            converge, and influence each other that will lead to the
              correct decision.

24

25  Sentencing Memorandum
                                        1

1    *United States v. Cook*, 938 F.2d 149, 153 (9th Cir. 1991).

2       *Cook* centered on a sentencing court's ability to grant downward departures

3    based on a "combination of factors" that constitute a single "mitigating factor." *Id.*

4    The sentencing landscape has changed since *Cook* with the Supreme Court's

5    holding in *United States v. Booker*, 543 U.S. 220 (2005). *Booker* eliminated a rigid

6    approach in formulating the appropriate sentence to be imposed in any given case.

7       Now a combination of factors may more reasonably justify downward

8    variances from the sentencing guidelines. *See*, *Gall v. United States*, 552 U.S. 38,

9    47 (2007) ("We also reject the use of a rigid mathematical formula that uses the

10   percentage of a departure as the standard for determining the strength of the

11   justifications required for a specific sentence."). In other words, "the totality of

12   circumstances" are considered in determining the "substantive reasonableness" of a

13   particular sentence imposed outside of the sentencing guideline range. *United*

14   *States v. Carty*, 520 F.3d 984, 993 (9th Cir. 2008) (citing *Gall*, __U.S.__, 128 S.Ct.

15   586, 597 (2007). A sentence outside the guideline range is not presumed

16   unreasonable. *Id.*; *see also*, *Nelson v. United States*, 555 U.S. 350, 352 (2009)

17   ("The Guidelines are not only *not mandatory* on sentencing courts; they are also

18   not to be *presumed* reasonable.") (emphasis in original).

19      Sentencing courts need not determine whether grounds that justify a variance

20   from a particular guideline range fit neatly within a specific provision of the

21   Guidelines when using such provision to impose a variance. *United States v.*

22   *Tankersley*, 537 F.3d 1100, 1114 (9th Cir. 2008) (no "need to consider whether the

23   district court correctly applied the departure provision ..., rather ... [a] district

24

25   Sentencing Memorandum

1  court's deviation from the applicable guideline range [is reviewed] for

2  reasonableness.").   The Supreme Court teaches:

3           It has been uniform and constant in the federal
           judicial tradition for the sentencing judge to consider
4          every convicted person as an individual and every case as
           a unique study in the human failings that sometimes
5          mitigate, sometimes magnify, the crime and the
           punishment to ensue.
6
   *Pepper v. United States*, 476, 487 (2011) (quoting  *Koon v. United States*, 518 U.S.
7
   81, 113 (1996)).
8
        Here, a combination of factors justify a sentence below the guideline
9
   sentencing range of 51 to 63 months in prison.  (ECF No. 37 at 24, ¶ 191).  The
10
   mitigating circumstances include the nature of the offense conduct, medical
11
   condition/post-offense rehabilitation efforts and extensive family support.[1]
12
   B.    **Guideline Calculation.**
13
        The parties do not dispute the guideline range calculation in the Presentence
14
   Investigation Report of 51 to 63 months imprisonment.  *Id.*
15
   C.    **Downward and Variance**
16
        1.    Possession for lawful sporting purposes.
17
        Before his arrest, Mr. Terrell worked at Quick Lube in Spokane.  (ECF No.
18
   37 at 23, ¶ 180).  On April 8, 2022, Mr. Terrell went to an indoor shooting range
19
   with a fellow-employee.  The fellow employee video recorded Mr. Terrell as he
20

21
        [1]  A flash drive will be provided to the Court and to the Government as a
22
   non-scannable exhibit. The flash drive will contain short video presentations from
23
   Mr. Terrell's family members.
24
   Sentencing Memorandum
25                                          3

1  shot off several rounds from a Glock Model 20 10mm pistol.  The pistol belonged

2  to the employee.   Mr. Terrell forwarded three of the videos to his then girlfriend,

3  who reported Mr. Terrell's firearm possession to his Washington State Department

4  of Corrections (DOC) officer.  Mr. Terrell was on DOC supervision at the time of

5  his possession.  (ECF No. 37 at 4-5, ¶¶ 9-13).

6       While Mr. Terrell was at the shooting range, he placed another pistol on

7  layaway.  However, Mr. Terrell contacted the shooting range and cancelled the

8  sale, informing them that "he was on probation and could not own it."  (ECF No.

9  37 at 4-5, ¶ 11).

10       On April 15, 2022, Mr. Terrell was interviewed by an officer with the

11  Spokane Police Department.  He freely admitted to shooting the Glock pistol at the

12  shooting range.  He admitted that his activities were recorded and he had sent

13  videos of his activities to his former girlfriend.  He wanted "to show her he was

14  having fun and blowing off steam."  Mr. Terrell admitted "he 'messed up' by going

15  to Sharp Shooters."   (ECF No. 37 at 5, ¶ 13).

16       Mr. Terrell was prohibited by federal law from possessing firearms due to his

17  previous felony convictions from California and Washington.  (ECF No. 37 at 10, ¶

18  61, at 12, ¶ 87, at 14, ¶ 105).

19       The Guidelines provide for a lower offense level of 6 "[i]f the defendant ...

20  possessed ... firearms solely for lawful sporting purposes ... and did not unlawfully

21  discharge or otherwise use such firearms..."  U.S.S.G. § 2K2.1(b)(2).  This

22  provision, however, does not technically apply to Mr. Terrell under the Sentencing

23  Guidelines because his base offense level is 20 under U.S.S.G. 2K2.1(a)(5), based

24

25  Sentencing Memorandum
                                    4

1   on a prior conviction for a crime of violence. *Id.*; *see* (ECF No. 37 at 12, ¶ 87).

2   While the offense level of 6 under § 2K2.1(b)(2) does not technically apply, the

3   circumstances of the offense set out in that provision are applicable to Mr. Terrell's

4   offense conduct. *Tankersley*, 537 F.3d at 1114 (sentencing courts need not follow

5   the technical application of a guideline provision to impose a variance).

6         Here, Mr. Terrell shot the pistol at a shooting range. He did not place any

7   person in danger. The manner in which he discharged the firearm was lawful, but

8   for his federal prohibition on possessing firearms. He showed the appropriate

9   degree of restraint when he opted to cancel the purchase of another pistol before

10  taking possession. When confronted by the police, Mr. Terrell freely admitted his

11  wrongdoing and recognized he "messed up." (ECF No. 37 at 5, § 13).

12        Under these circumstances, it is requested that the Court vary downward

13  from the guideline range. Rather than follow the level 6 offense level in

14  2K2.1(b)(2), it is suggested that the Court reduce the base offense level by 6 levels,

15  to a level 14. Then taking into account a 2 level reduction for acceptance of

16  responsibility, it is requested that the Court set the guideline range at 30 to 37

17  months, resulting from a total offense level of 12, in a criminal history category of

18  VI.

19        2.    Serious Medical Condition and Post-Offense Treatment.

20  Mr. Terrell has been diagnosed with stage IV chronic kidney disease.[2]

21

22  _____

23      [2]  Mr. Terrell's medical records from the hospital and records from his

24  treating physician will be filed under seal with permission from the Court due to

25  Sentencing Memorandum

5

1   Medical Records, Under Seal at 2. In September 2022, his treating physician

2   indicated that Mr. Terrell may be in need of dialysis treatment, and suggested that

3   he make the effort to be placed on the list for a kidney transplant. *See,* Medical

4   Records, Under Seal at 6.  Mr. Terrell's follow up with his treating physician was

5   interrupted by his current incarceration. *Id.* at 21 (reminder call 11/1/2022, after

6   arrest on 10/29/2022).

7        Prior to seeing his treating physician in September 2022, Mr. Terrell was

8   hospitalized in August 2022, on a "Chief Complaint: Flank/Back Pain," with

9   "Acute kidney injury..." *Id.* at 24.  The hospital recommended a follow up with the

10  treating physician and suggested Mr. Terrell quit smoking. *Id.* at 25.

11       Mr. Terrell's treating physician consulted with him "for hypertensive

12  emergency and acute kidney injury on advanced chronic kidney disease." *Id.* at 33.

13  The doctor also "discussed with Mr. Terrell that he is very close to requiring

14  dialysis and will need close [follow up] fu." *Id.* at 37.

15       Another medical service provider reported that Mr. Terrell has "a history of

16  _____

17  the sensitive nature of the records.  The relevant portions of the medical records

18  are highlighted in yellow to allow the references to be located easier.  The medical

19  records are cited as Medical Records, Under Seal, followed by a page number(s).

20  Also, to be filed under seal is a report from Spokane Regional Recovery Centers,

21  relating to treatment efforts made by Mr. Terrell before his arrest.  The page

22  number for that report will follow sequentially after the medical records.  Thus,

23  the medical records are pages 1-56 and the SPARC report are pages 57-61.

24

Sentencing Memorandum

25                                              6

1  chronic kidney disease and hypertension he has been off his medication for quite

2  some time."  After his last discharge from the hospital, Mr. Terrell "was

3  incarcerated," resulting in a lack of "adequate treatment."  *Id.* at 42.

4       Mr. Terrell had medical imaging performed.  Imaging confirmed "medical

5  renal disease" and located a "structure within the right kidney most likely a cyst."

6  *Id.* at 50.

7       The hospital records indicated that Mr. Terrell was previously admitted to

8  the hospital "for acute kidney injury" in April 2022.  *Id.* at 38.  His treating

9  physician "suspects the patient's renal dysfunction may be progressive."  *Id.* at 27.

10      During the summer of 2022, Mr. Terrell entered an outpatient treatment

11  program at SPARC.  SPARC Report, Under Seal at 57.  Mr. Terrell was determined

12  to remain sober to qualify for placement on the kidney transplant list.  *Id.* at 58

13  ("He feels he is in bad health and is eager to have some things resolved.").

14      Mr. Terrell started outpatient treatment.  SPARC Report at 57 ("Admission

15  6/17/2022").  However, that treatment did not prevent a relapse in August 2022.

16  *Id.* 58 ("he reported his last drink on August 29, 2022); and at 60 ("his first

17  experience was with our outpatient[, however,] Frederick relapsed while in

18  outpatient and was referred to inpatient.").  Mr. Terrell was admitted to SPARC

19  inpatient center on September 2, 2022.  *Id.* at 57.

20      During treatment, Mr. Terrell disclosed some emotional/mental health issues

21  and "some significant trauma in his life and received no counseling for any of it."

22  *Id.* at 59.  He also attended "a weekly re-framing group," designed to "teach

23  Frederick ways to manage negative thoughts that lead to negative emotions so that

24

25  Sentencing Memorandum

1  he can react to situations rationally." *Id.*

2      Mr. Terrell also met with the behavioral health counselor for an evaluation.

3  *Id.* SPARC listed his "Working Diagnosis (per DSM-V Criteria) as "Alcohol Use

4  Disorder, Severe; Bipolar I disorder, "Current of most recent episode manic;" and

5  PTSD. *Id.* at 57.

6      SPARC reported that "Frederick admits that his use of substances has had a

7  negative effect on most areas of his life causing damaged relationships, loss of

8  employment and recent homelessness." *Id.* at 60. And, "[w]hile in treatment[,]

9  Frederick worked on increasing internal motivation to maintain sobriety[;] [h]e was

10  fully engaged in treatment and an active participant in all groups[;] Frederick was a

11  mentor to his peers and willing to help other people whenever he had the

12  opportunity[; and] [h]e will continue recommended SUD Outpatient treatment at

13  SPARC," beginning on October 3, 2022. *Id.* at 69.

14      "While in treatment[,] Frederick worked on identifying triggers and

15  developed coping skills for triggers as they arise." *Id.* at 60. Additionally,

16  "Frederick developed a recovery plan to address these triggers." During treatment,

17  Mr. Terrell also attended daily AA meetings and "nightly in-house meetings of per

18  lead 12 step groups." *Id.*

19      Mr. Terrell successfully completed the inpatient program and was discharged

20  on September 30, 2022. *Id.* at 57. He resided at a clean and sober home, the

21  Latawah Oxford House in Spokane and attended outpatient treatment, after his

22  discharge from the inpatient program. (ECF No. 8 at 2).

23      He was arrested and arraigned on October 20, 2022. (ECF No. 37 at 3, ¶ 2).

24

25  Sentencing Memorandum

1    SPARC discharged him on October 26, 2022.  SPARC Report at 57.  In other

2    words, Mr. Terrell's arrest became a superseding intervening event that disrupted

3    what appears to be a sincere effort as post-offense rehabilitation.

4        There are two significant factors at play here.  The first is Mr. Terrell's

5    serious medical issues as evidence by the medical reports submitted under seal.

6    The Guidelines recognize that sentencing courts may vary downward for "[a]n

7    extraordinary physical impairment." *See*, *United States v. Tosti*, 733 F.3d 816, 824

8    (9th Cir. 2013) (quoting U.S.S.G. § 5H1.4.).  In cases of "serious" medical

9    impairment, the Guidelines suggest home detention may be an appropriate

10   sentence. *Id.*  Furthermore, a sentencing court may vary downward from the

11   guideline sentencing range for post-offense rehabilitation. *See*, *United States v.*

12   *Tzoc-Sierra*, 387 F.3d 978, 981-82 (9th Cir. 2004); *United States v. Chapman*, 356

13   F.3d 843, 847-88 (8th Cir. 2004); and *United States v. Hairston*, 502 F.3d 378,

14   383-84 (6th Cir. 2007).

15       Here, the combination of Mr. Terrell's serious medical condition, along with

16   his post-offense efforts to reach a life of sobriety justify a downward variance.  Due

17   to his serious health condition, he is motivated to remain sober to get on the kidney

18   transplant list.  This includes the fact the Mr. Terrell stopped smoking while in

19   treatment to accomplish that goal.

20       In addition, Mr. Terrell's family support adds further reasons to vary below

21   the guideline range.  This support gives Mr. Terrell the incentive to succeed, after

22   many years of life-failures and incarceration due to his alcohol abuse.

23       3.    Family support system.

24

25   Sentencing Memorandum

1    Attached is a text message Mr. Terrell's mother, Renay Allen, asked to pass

2  on to the Court for consideration.  In addition, a non-scannable exhibit will be

3  filed.  This exhibit contains statements of support and hope for Mr. Terrell from

4  family members.  The audio/video recordings will be filed with the Clerk's Office

5  and served on the government in a flash-drive.

6    The family members in the audio/video recordings and length of recordings

7  are as follows:

8    a.    Aunt Donnie - 2 minutes, 45 seconds.

9    b.    Mother, Renay Allen - 2 minutes 40 seconds.

10    c.    Aunt April - 1 minute 25 seconds

11    d.    Uncle Eric, 7 minutes, 17 seconds.

12    The family statements establish tremendous family support.  They establish

13  the family's recognition that Mr. Terrell can be successful if he maintains a life or

14  sobriety and they are ready to help him.  In regards to a defendant's family support

15  system, the Sixth Circuit previously stated:

16    the district court's references to Stall's family and friends
    is not reversible error because the district court
17    considered not the mere existence of family support, but
    the fact that Stall's family and friends had "promised to
18    aid in his rehabilitation." While family ties of a defendant
    are not "ordinarily relevant," U.S.S.G. § 5H1.6, they may
19    be relevant insofar as they bear some connection to
    permissible considerations. With respect to Stall, the
20    district court believed Stall's "strong social support" was
    one reason to think that therapy would be effective, that a
21    lengthy term of supervised release could adequately
    protect the public, and that a longer term of incarceration
22    was unnecessary to vindicate the statutory sentencing
    factors. In this context, we cannot say this consideration
23    was impermissible or that the district court abused its
    discretion.
24

25  Sentencing Memorandum
                                        10

1    *United States v. Stall*, 581 F.3d 276, 289 (6th Cir. 2009)

2         Although Mr. Terrell has a past that is fraught with past criminal activity,

3    and involving violence, his family describes him as a kind hearted person when he

4    is sober.   His family's support in this regard in meaningful and may be considered

5    by this Court when fashioning the appropriate sentence to be imposed.  *Id.*

6    D.    **18 U.S.C. § 3553(a)**.

7         The nature of the offense is serious and Mr. Terrell understood that when he

8    admitted to the police that he "messed up."  (ECF No. 37 at 5, ¶ 13).  However, the

9    offense conduct is mitigated to some degree in view of the underlying conduct.

10   Mr. Terrell is not eligible under the Guidelines for an offense reduction for

11   possessing the Glock pistol for lawful sporting purposes due to his past conviction

12   for a crime of violence.  *See*, U.S.S.G. § 2K2.1(b)(2).  His conduct, however, fits

13   squarely within the conduct that permits the lawful sporting purpose reduction, but

14   for, the prior conviction.  A previously convicted felon who demonstrates that

15   possession of a firearm was strictly for lawful purposes, vastly diminishes the

16   chances that such firearm may be used in a violent manner.

17        In this case, Mr. Terrell's possession was momentary.  The pistol he shot did

18   not belong to him.  After further reflection, Mr. Terrell cancelled the sale of the

19   other pistol he had on layaway from the shooting range.  Under these

20   circumstances, a downward variance is justified.

21        While growing up, Mr. Terrell witnessed violence by his father towards his

22   mother.  He reported that his father beat him and his sister with 2x4s, hangers and

23   with his fist.

24

25   Sentencing Memorandum
                                          11

1    Mr. Terrell's background includes a lengthy and recent criminal history,

2  including acts of violence.  The information provided by his family and in his

3  history connect this criminal background to a serious drinking problem.  (ECF No.

4  37 at 21, ¶ 164).

5    Last year, Mr. Terrell took the efforts to maintain a life of sobriety.  He

6  successfully completed inpatient treatment.  He was living in a sober home and

7  participating in outpatient treatment just before his arrest.  His mother reported that

8  Mr. Terrell "was sober, had started going to church, and was on the right path at the

9  time of his arrest for the instant offense." *Id.*

10    The sentence that is recommended below will adequately promote respect for

11  the law.  Again, Mr. Terrell demonstrated his respect for the law by admitting the

12  wrongfulness of his conduct.  The recommended sentence will provide adequate

13  deterrence and respect for the law, considering the fact that Mr. Terrell possessed

14  the Glock 20 for a brief period and for lawful sporting purposes.

15  D.    **Recommendation**.

16    Based on the foregoing, it is recommended that the Court imposed a sentence

17  of imprisonment below the advisory guideline sentencing range of 51 to 63 months.

18  It is recommended that the Court impose a sentence of imprisonment of 24 months

19  in prison, or in any event, no longer than 36 months in prison.

20    It is recommended that the Court impose no fine and a $100.00 penalty

21  assessment.  It is recommended that the Court impose a 3-year term of supervised

22  release.

23

24

25  Sentencing Memorandum

1    Dated this 6th day of June, 2023.

2                                    Respectfully Submitted,

3

4                                    *s/ Stephen R. Hormel*
                                     WSBA # 18733
5                                    Stephen R. Hormel
                                     Hormel Law Office, L.L.C
6                                    17722 East Sprague Avenue
                                     Spokane Valley, WA 99016
7                                    Telephone: (509) 926-5177
                                     Facsimile: (509) 926-4318
8

9

                          **CERTIFICATE OF SERVICE**
10

          I hereby certify that on June 6, 2023, I electronically served the foregoing
11

12   under seal Sentencing Memorandum, to the following: Michael Vander Giessen,

     Assistant United States Attorney, and Jennifer Frieling, United States Probation
13

14   Officer.

                                     *s/ Stephen R. Hormel*
15                                   WSBA # 18733
                                     Stephen R. Hormel
16                                   Hormel Law Office, L.L.C
                                     17722 East Sprague Avenue
17                                   Spokane Valley, WA 99016
                                     Telephone: (509) 926-5177
18                                   Facsimile: (509) 926-4318

19

20

21

22

23

24

     Sentencing Memorandum
25                                          13